IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| MELANIE KOTLARSZ, on behalf of herself and others similarly situated, | : | CASE NO. _____ |
| Plaintiff, | : | |
| v. | : | **COMPLAINT -- CLASS ACTION** |
| HEALTH PLAN FREEDOM INC., a North Carolina corporation, | : | |
| Defendant. | : | |

**DECLARATORY AND PERMANENT INJUNCTIVE RELIEF REQUESTED
DEMAND FOR A JURY TRIAL**

Plaintiff, MELANIE KOTLARSZ ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant, HEALTH PLAN FREEDOM INC. ("Defendant"), pursuant to the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. §§ 227(c)(5). On personal knowledge, investigation of counsel, and on information and belief, Plaintiff alleges as follows:

**NATURE OF ACTION**

1. In 2023 and 2024, Defendant or its agents made at least thirteen telemarketing calls to Plaintiff's personal cellular telephone for the purpose of selling insurance products and services. Defendant or its agents made these calls despite Plaintiff having registered her telephone number on the national do-not-call registry almost two decades ago in 2004. The conduct of Defendant or its agents was particularly reckless because Plaintiff pleaded with the callers to stop calling her phone and informed them that she is on the do-not-call list, but the calls continued regardless.

1

2. Plaintiff brings this action for injunctive relief and statutory damages arising out of and relating to the conduct of Defendant or its agents in negligently, knowingly, and/or willfully initiating more than one telemarketing telephone call within a 12-month period to Plaintiff and class members on their residential telephone lines which have been registered on the national do-not-call registry, without prior express consent, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

**PARTIES**

3. Plaintiff is an individual residing in Winston-Salem, North Carolina.

4. Defendant is a for-profit corporation organized under the laws of North Carolina with its principal place of business and headquarters located at 8100 Tower Point Dr., Charlotte, NC 28227.

**JURISDICTION AND VENUE**

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brings this action pursuant to 47 U.S.C. § 227 *et seq*.

6. This Court has personal jurisdiction over Defendant because Defendant is incorporated under the laws of North Carolina and Defendant's principal place of business is in North Carolina.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the telemarketing calls that are the subject of this lawsuit were made to Plaintiff while she was a resident of and present in this District.

**TCPA BACKGROUND**

8. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy . . . ." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

A. The National Do-Not-Call Registry

9. 47 U.S.C. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

10. The national do-not-call registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the national do-not-call registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

13. The FCC has issued rulings clarifying that in order to obtain an individual's consent to receive telemarketing calls for purposes of the TCPA, a clear, unambiguous, and conspicuous written disclosure must be provided by the individual. 2012 FCC Order, 27 FCC Rcd. at 1839 ("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer—providing permission in writing—to authorize autodialed or prerecorded telemarketing calls. . . .").

**FACTUAL ALLEGATIONS**

14. Defendant is a "person" as the term is defined by 47 U.S.C. § 153(39).

15. Defendant is a for-profit insurance agency that purports to help people make informed decisions about insurance products "by educating and providing options with over 60 insurance companies." *See* Ex. A.

16. Defendant's website advertises eighteen different categories of insurance products, including individual, family, Medicare, and group insurance products.

17. Upon information and belief, Defendant makes telemarketing calls to contact potential customers. In the alternative, Defendant may employ third parties in furtherance of marketing efforts to contact potential customers on their behalf via myriad means, including telemarketing.

18. At no point has Plaintiff sought out or solicited information regarding Defendant's insurance products prior to receiving the telemarketing calls at issue.

19. Plaintiff has never consented in writing, or otherwise, to receive telemarketing calls from Defendant or its agents. Plaintiff has never provided Defendant with her telephone number.

20. Plaintiff's cellular telephone number, 336-XXX-1224, is a residential telephone line.

21. Plaintiff added this telephone number to the national do-not-call registry on August 21, 2004.

22. Despite this, Plaintiff received at least thirteen telemarketing calls from Defendant or its agent between December 19, 2023 and February 15, 2024.

23. Upon information and belief, and upon investigation of counsel, Plaintiff alleges the calls were placed by Defendant, or a third party acting as Defendant's agent, for the purpose of soliciting Defendant's insurance products and services to Plaintiff on behalf of Defendant.

4

24. Moreover, the caller used a Caller-ID spoofing function to make it appear the calls were local. Plaintiff's Caller-ID showed a phone number beginning 336-799-59XX for all thirteen calls referenced above, matching Plaintiff's personal cellular telephone's area code. Spoofing phone numbers to appear local is a frequent technique by telemarketers used to increase the chances that the call is answered by consumers, tricking them into thinking that they are getting a local call.

25. Specifically, on December 19, 22, 26, 27, and 28, 2023, January 15, 16, and 29, 2024, and February 15, 2024, Plaintiff received thirteen calls from telephone numbers 336-799-5944, -5945, -5946, -5947, -5949, -5950, and -5953. Plaintiff answered seven of these calls, rejected five, and missed one.

26. For the calls Plaintiff answered, the caller began each call using language to suggest the call was from a governmental entity regarding the federal Health Insurance Marketplace. The caller wanted Plaintiff to sign up for a marketplace health insurance plan. Plaintiff always advised she was not interested.

27. During one such call, Plaintiff asked the caller, "are you with the government?" but the caller evaded the question. After probing again, the caller admitted they were not with the government and said something to the effect of them being "Health Care Advisors on a recorded line." Plaintiff stated she does not need a marketplace plan and has her own health insurance, and then asked the caller not to call because Plaintiff is on the do-not-call for over 20 years. The calls from numbers starting 336-799-59XX did not cease, however.

28. On January 29, 2024, after receiving yet another call from 366-799-5946, and frustrated by the endless nature of the calls, Plaintiff placed a return call to 336-799-5946 and feigned interest in insurance to ascertain additional information about the identity of the caller, and

for no other purpose. The caller promptly transferred Plaintiff to an insurance agent who identified himself as Steve Srebnick.

29. Srebnick told Plaintiff he was an insurance broker. Srebnick solicited Plaintiff to sign up over the telephone for insurance. Plaintiff told Srebnick she does not conduct business over the phone, and asked Srebnick for his website, phone number, and address. Srebnick told Plaintiff he was in Charlotte – the same city where Defendant is headquartered. In furtherance of feigning interest to ascertain the identity of the telemarketers, Plaintiff offered to come down to Srebnick's office and talk face-to-face about insurance. Srebnick told Plaintiff he did not have an office and that he does everything from home and that it would not be possible to meet face-to-face. Srebnick provided Plaintiff with a number at which to reach him: 307-200-0993.

30. A Google search of Srebnick reveals he is an employee of Defendant and has been a licensed agent since 2011 with a national producer number of 9127296. For example, Srebnick is featured on Defendant's website as a member of Defendant's "Team of Professional Agents," and Srebnick is featured prominently in the center of a photograph of Defendant's agent team on one of Defendant's About Us web pages. *See* Ex. B, Ex. C. The same photograph of Srebnick and Defendant's agent team was posted on Defendant's public Facebook profile on June 14, 2023. *See* Ex. D.

31. Screen shots of the calls Plaintiff received are attached hereto at Exhibit E.

32. The calls Plaintiff received purporting to be from the Marketplace or "Health Care Advisors" were explicit solicitations by Defendant, or Defendant's agent, or both, regarding Defendant's insurance products and services. Once Plaintiff was transferred, Defendant, through its employee, Srebnick, further solicited Plaintiff regarding Defendant's insurance products and services.

33. Plaintiff alleges Defendant made the calls to Plaintiff directly. In the alternative, Plaintiff alleges based on the business model of companies who engage in telemarketing for the purpose of gathering warm leads, such as the caller who initiated the calls to Plaintiff, a contract must exist between the original caller and Defendant. Plaintiff alleges Defendant should be held vicariously liable for the conduct of its agent, the original caller, and directly liable for the conduct of Defendant's employees, including Srebnick. The individual to whom Plaintiff was ultimately transferred was Defendant's employee. Defendant directly employed Srebnick at the time Plaintiff received these calls. At a minimum, Defendant accepts the transfers from third parties who are marketing and soliciting insurance products and services on behalf of Defendant, thereby ratifying their conduct. A reasonable person would understand the third party initiating the calls would be doing so at the direction and with the authority of Defendant. Accordingly, the conduct of Defendant's agent(s) and employees gives the appearance of apparent authority, actual authority, and ratification.

34. Around the time of these calls, Plaintiff was not in the market for or researching health insurance products or services on the internet, in person, or otherwise. Plaintiff is disabled and has had a Medicare plan through Humana for over seven years. Plaintiff has never interacted with Defendant or their agents in any manner, other than through the receipt of the above telemarketing calls. Plaintiff did not consent to receiving these calls.

35. Plaintiff and all members of the class defined below have been harmed by the acts of Defendant or its agents because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance. The calls also occupied Plaintiff's and class members' telephone lines, used up their time, prevented them from receiving legitimate communication, and interfered with their use of their telephones for legitimate purposes.

7

Case 1:24-cv-00386   Document 1   Filed 05/07/24   Page 7 of 14

## CLASS ACTION ALLEGATIONS

36.     As authorized by Fed. R. Civ. P. 23(b)(2) or (b)(3), Plaintiff bring this action seeking injunctive relief and money damages on behalf of herself and on behalf of all other persons similarly situated throughout the United States.

37.     Plaintiff proposes the following "National Do-Not-Call Registry Class" definition, subject to amendment as appropriate:

> **National Do-Not-Call Registry Class**: All persons in the United States (a) whose numbers are listed on the national do-not-call registry; (b) and who received two or more telemarketing calls/texts within any 12-month period from Defendant or its agents to their residential telephone number 31 or more days after the telephone number was listed on the national do-not-call registry; (c) at any time in the period that begins four years before the filing of the complaint in this action to the date that class notice is disseminated (the "Class Period").

38.     Plaintiff represents, and is a member of, the proposed class. Excluded from the class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any person who made a transaction with Defendant in the preceding 18 months before receiving a telemarketing call/text, any person who has executed a signed, written agreement between the person and Defendant which states that the person agrees to be contacted by Defendant and includes the telephone number to which the calls may be placed, any Judge and/or Magistrate Judge to whom this action is assigned, and any member of such Judges' staffs and immediate families.

39.     **Numerosity.** The potential members of the proposed class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls. Individual joinder of these persons is impracticable.

40.     **Existence and predominance of common questions of law and fact.** Plaintiff and all members of the proposed class have been harmed by the acts of Defendant, including, but not

limited to, multiple involuntary telephone and electrical charges, the invasion of their privacy, aggravation, annoyance, waste of time, the intrusion on their telephone that occupied it from receiving legitimate communications, and violations of their statutory rights.

41. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

42. The members of the National Do-Not-Call Registry Class, as defined above, are identifiable through telephone records and telephone number databases.

43. There are well defined and nearly identical questions of law and fact common to Plaintiff and members of the proposed class. The questions of law and fact involving the class claims predominate over questions which may affect individual members of the proposed class. These common questions of law and fact include, but are not limited to, the following:

   a. Whether Defendant and/or its agents systematically made multiple telemarketing telephone calls to members of the National Do-Not-Call Registry Class;

   b. Whether Defendant and/or its agents made the calls referenced in Paragraph 43(a) without first obtaining prior express written consent to make the calls;

   c. Whether Defendant's conduct and/or the conduct of its agents referenced in Paragraph 43(a) was knowing and/or willful;

   d. Whether Defendant and/or its agents are liable for damages as a result of the conduct referenced in Paragraph 43(a), and the amount of such damages; and

   e. Whether Defendant and/or its agents should be enjoined from engaging in the conduct referenced in Paragraph 43(a) in the future.

44. **Typicality.** Plaintiff's claims are typical of the claims of the proposed class members because they arise out of the same common course of conduct by Defendant and/or its agents and are based on the same legal and remedial theories. Specifically, the proposed class members are all persons who received telemarketing calls on their telephones without their prior express written consent. Plaintiff is a member of the proposed class and will fairly and adequately represent and protect the interests of the proposed class as she has no interests that conflict with any of the proposed class members.

45. **Adequacy of Representation.** Plaintiff is an adequate representative of the proposed class because her interests do not conflict with the interests of the proposed class, she will fairly and adequately protect the interests of the proposed class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

46. **Superiority.** Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

47. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the proposed class in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes

consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

48. Defendant acted on grounds generally applicable to the proposed class, thereby making final injunctive relief and corresponding declaratory relief with respect to the proposed class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or its agents on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227, *et seq.*** 
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

49. Plaintiff repeats her prior allegations of this Complaint from paragraphs 1-48 and incorporates them by reference herein.

50. The foregoing acts and omissions of Defendant and/or its agents constitute numerous and multiple violations of the TCPA, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the proposed National Do-Not-Call Registry Class despite their numbers being on the national do-not-call registry in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2).

51. Defendant's violations were willful or knowing.

52. As a result of Defendant's violations, Plaintiff and members of the proposed National Do-Not-Call Registry Class are entitled to treble damages of up to $1,500 for each call made in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5).

53. Plaintiff and the members of the proposed National Do-Not-Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its agents from making telemarketing calls to telephone numbers registered on the national do-not-call registry, except for emergency purposes, in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

54. Plaintiff and members of the proposed National Do-Not-Call Registry Class are also entitled to an award of attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227, *et seq.*
### (On Behalf of Plaintiff and the National Do-Not-Call Registry Class)

55. Plaintiff repeats her prior allegations of this Complaint from paragraphs 1-48 and incorporates them by reference herein.

56. The foregoing acts and omissions of Defendant and/or its agents constitute numerous and multiple violations of the TCPA, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the proposed National Do-Not-Call Registry Class despite their numbers being on the national do-not-call registry in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2).

57. As a result of Defendant's violations, Plaintiff and members of the proposed National Do-Not-Call Registry Class are entitled to an award of $500 in statutory damages for each call made in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5).

58. Plaintiff and the members of the proposed National Do-Not-Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its agents from making telemarketing calls to telephone numbers registered on the national do-not-call registry, except for emergency purposes, in the future pursuant to 47 U.S.C. § 227(c)(5).

59. Plaintiff and members of the proposed National Do-Not-Call Registry Class are also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed class, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of undersigned counsel as counsel for the Classes;

D. A declaration that Defendant's actions complained of herein violated the TCPA;

E. An order enjoining Defendant from making telemarketing calls to numbers on the national do-not-call registry absent an emergency circumstance;

F. An award of damages to Plaintiff and each member of the proposed National Do-Not-Call Registry Class, as allowed by law, including, but not limited to, treble damages of up to $1,500 for each willful or knowing telemarketing call that violated the TCPA and $500 in statutory damages for each telemarketing call that otherwise violated the TCPA;

G. An award of attorney fees, expenses, and costs; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a jury trial on all issues so triable.

Dated: May 7, 2024

Respectfully submitted,

RAYBURN COOPER & DURHAM, P.A.

By: */s/ Ross R. Fulton*
Ross R. Fulton
N.C. State Bar No. 31538
227 West Trade Street, Suite 1200
Charlotte, NC 28202
Telephone: 704-334-0891
Facsimile: 704-377-1897
E-Mail: rfulton@rcdlaw.net

SMITH KRIVOSHEY, PC

Yeremey O. Krivoshey (SBN 295032)
(*pro hac vice* pending)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: 888-410-0415
E-Mail: yeremey@skclassactions.com

Aleksandr "Sasha" Litvinov (SBN 95598)
(*pro hac vice* pending)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-7404
Facsimile: 888-410-0415
E-Mail: sasha@skclassactions.com

*Attorneys for Plaintiff
and the Proposed Class*